UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Federal District

CIVIL ACTION
NO

| | |
|---|---|
| Gerard D. Grandoit, | ) |
| Employee, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Liberty Mutual Insurance | ) |
| Company and another [1] | ) |
| Insurer, Defendant(s) | ) |

COMPLAINT



## INTRODUCTION

The Plaintiff, Gerard D. Grandoit, was working at GTE
Corporation as a contract engineering technician for Technical
Aid Corporation, the Employer, and fell down from a highly
defective bench chair which collapsed on March 23, 1990 where he
sustained an injury to his cervical and lumbar spine. Liberty
Mutual Insurance Company, the insurer, the defendant, paid
benefits and requested for a discontinuance of benefits. The case
was initially accepted at the Department of Industrial Accidents.
The conference judge was not able to calculate the single Average
Weekly Wage causing the benefits to discontinue due to a false
information provided by the second employer, Cooperative for
Human Services. He issued a conference order by asking the
plaintiff to bring the right information on the next court day.

---

[1] Technical Aid Corporation, upon the court finding.

1

The plaintiff came back for a hearing de novo before a different member in his claim. The 2nd employer provided the same false information in a computerized work sheet. The member based in this deceitful report to find that the plaintiff did not have any concurrent employment. The same judge also based in a report submitted by the defendant to find that the plaintiff was not disabled without requesting an impartial examination to resolve the medical disputes on the record. The plaintiff appealed the decision at the DIA and Appeals Court where a single justice advised him to re-file his claim with a different theory and counsel at the Department of Industrial Accidents, ("DIA").

During the recess of the second hearing, the defendant made a phone call to its claim adjustor to settle the claim during the recess of the hearing whom was not present at her desk by causing this case not to resolve which was raised before 2nd hearing judge at the time of the hearing. At further process, the defendant accepted before a law judge that its examiner was not honest. The plaintiff raised the question that the defendant did not accept to pay medical bills as requested. The law judge instructed the defendant that the superior could enforce the decision made by the early judge if it still refuses to obey on the 2nd hearing decision for the medical expenses. The defendant did accept that it would comply but it has not been respecting the commitment made from the date of the acceptance until today.

2

The plaintiff brings this action to this court against the defendant, Tech Aid Corporation, ( " Employer "), Liberty Mutual Insurance Company, the insurer which was hired an independent medical examiner to examine him. The examiner intentionally, maliciously, knowingly, willfully, illegally, deliberately, unlawfully provided a false statement in a fax, contrary to the accident report, to prevent him from receiving his constitutional right at the DIA. This act of deception caused harm to him by convincing the single member not to reopen the record.

This complaint is challenging the first, (" 1st ") hearing decision on the willful misconduct by the defendant and its examiner in its reports, depositions, fax requests for a fair justification on the merits contained thereof. The single member repeated exactly the diagnosis of the examiner in the first hearing decision that the plaintiff hurts his back only at work which was unconstitutional. The accident report signed by a supervisor stating neck and back injuries.

The plaintiff redirects this action to recover on the benefits owed to him due to the truth on the accident report, contrary to the finding from the defendant's examiner causing his claim to discontinue at the DIA. The 2nd hearing judge requested an Impartial Medical Examination ("IME"). The impartial examiner opined his finding in a report which was admitted as a prima facie evidence on the matter contained therein without any

objection from the defendant. The examiner requested a vocational rehabilitation to help the plaintiff of returning back to work. The plaintiff made several efforts to participate into the program and did not receive the help needed from either the court nor the employer on the matter. The 2nd hearing judge avoided the impartial opinion in his decision.

There was never a fact finder on the 1st hearing decision which was affirmed due to a recusal but not for medical reasons. The recusal was erroneous and improper on the record under the judicial disqualification. There was no verbal nor writing paper in support of the recusal of the judge when the law requires the recusal to be formal and refer the plaintiff's attorney to proper channel when the plaintiff told the senior judge exactly of what his attorney told him. He wrote a letter to the commissioner and other law judges in order to see as to whether he could find the truth on the proposition made to him by his attorney against the DIA. His attorney was disbarred after being caught in dealing with other fraud issues which was proving the fact.

The plaintiff files this action to enforce that the reviewing board did not have the authority on the 2nd time filing to overturn the recusal of the law judge. The Appeals Court did not have the authority also to overturn the single justice's judgments on the 1st time filing. The further appellate review erred for not returning the claim to the reviewing board at the

4

DIA on instruction that the prior involvement was never on the record. The case was never reviewed by the reviewing board where the recusal of the judge was an error on lacking in substance on the record under the S.J.C. Rule 3:09, Cannon 3 (c) (1). The law is only wanting to put the plaintiff behind bar for what he does not do when he is not the one implicating the DIA on being unfair to a worker compensation recipient.

Evidence showed that the plaintiff was an employee in three different employers. He had an accident occurred in March 23, 1990 where he received treatments due to the pain experiencing. His physicians and other doctors advised him to participate in a vocational rehabilitation. He had tried on many occasions to retrain himself and did not receive the assistance needed from the employer to participate in the program. His problem would have been over by now had he was receiving the proper training requested in several occasions. He appealed the unconstitutional judgement as it is to Further Appellate Review but he had no choice of accepting of what the court is doing and issuing to him. The appellate court was able to make a fair judgement on the early decision made by the single member at the DIA. He tried his best to achieve his administrative remedies which rest in the legislative now on due process of law when a party deliberately provides a wrong fact intentionally to destroy the credibility of a witness as here by the defendant and the employer

5

## PARTIES

1.  The plaintiff, Gerard D. Grandoit, is a resident of Cambridge, Massachusetts, United States and citizen of the United States.

2.  The plaintiff, his spirit, soul, is an intern life who lives at 2 Cedar Square, Apt. 1, Cambridge, Massachusetts.

3.  The plaintiff, in the name of the father, in of the son, in of the holly Ghost, holly Spirit, Amen, who lives at 2 Cedar Square, Apt. 1, Cambridge, Massachusetts.

4.  The plaintiff, holly spirit, is an intern life who lives at 2 Cedar Square, Apt. 1, Cambridge, Massachusetts.

5.  The plaintiff represents by Prose, Gerard D. Grandoit, in this proceedings located at 2 Cedar square, apartment 1, Cambridge, Massachusetts 02140.

6.  The defendant, Liberty Mutual Insurance Company, has its place of business located now in this claim at 15 King Grant Drive, BalaCynnyd, PA 19004.

7.  The Defendant, Technical Aid Corporation, had its usual place of business, located at 109 Oak St., Newton Upper Falls, Massachusetts 02164.

8.  The defendant, Liberty Mutual Insurance Company, or ( Technical Aid Corporation), is representing by Attorney Jean M. Shea Budrow, at relevant times, Latronico and Whitestone, located at 200 Berkeley Street, Boston, Massachusetts 02116.

## FACTS

9.   The plaintiff was working at General Telephone Electronics,
     Inc., Government Systems Corporation, as a contract
     Technical Aid Corporation, ("Tech Aid"), the first (" 1st ")
     employer, in the second shift, to perform an electronic duty
     as an electronic technician. He fell down from a highly
     defective working bench chair on March 23, 1990 where he
     sustained an injury to his cervical and lumbar spine. He was
     also working at Cooperative For Human Services, ("CFHS"),
     the 2nd employer during the weekend and considered as an
     employee for Cayman Systems Incorporated, ("CSI")the third
     employer at the time of the accident.

10.  He went to Mount Auburn Hospital in Cambridge, Massachusetts
     in the same night of the accident. He had X-rays done to his
     cervical and lumbar spine. There was a finding on the
     cervical spine which reveals kyphosis.

11.  The defendant paid him compensation benefits to the rate at
     Technical Aid corporation. He did not receive the correct
     rate from the three employers where he requested it.

12.  The defendant brought a report on march 21, 1991 at the DIA
     to stop him from receiving his benefits. A conference Judge
     accepted the claim but discontinued benefits due to a report
     from the 2nd employer stating that he was fired on March 18,
     1990, a week before the date of the accident. He requested

for him to bring the correct information on the next court
date for the correct single Average Weekly Wake (" AWW ").

13. On December 6, 1991, the plaintiff timely appealed the Order
which came before another administrative judge for a pre-
conference hearing whom requested the defendant and the
plaintiff to reach a Lump Sum Settlement of Agreement.

14. On November 13, 1992, the plaintiff returned back before the
pre-conference judge for a hearing de novo. The 2nd employer
still lied in a different piece of paper requesting by the
DIA to provide the correct last day of employment. It mailed
a computation sheet to the DIA with a false statement during
the process stating that the plaintiff was fired on March
18, 1990. The single member adopted the defendant's medical
reports and the employer's letter to stop his benefits on
the date of the hearing. He has been trying since then to
prove the injustice done to him.

15. The single member did not adjust the single AWW under
M.G.L.c.152 (1) due to the wage from Technical Aid, CFHS and
CSI nor request an impartial medical examination due to the
conflict of the medical issues on the record. The single
member reached a decision with a wrong date dated January
29, 1993 stating that the defendant's examiner was a
credible doctor on the record and carrying the same
diagnosis by the examiner in her decision.

16. At some relevant times, the plaintiff told the 2nd employer

that it would not be participating in the compensation benefits owed to him. The employer accepted to provide the true record and corrected the early errors made by stating in a letter that it was a mistake from its party on the wrong information providing early to the DIA.

17. On March 2, 1993, the plaintiff filed a motion to present additional medical and newly discovered evidences which were not available at the time of the hearing on November 13, 1993. His Attorney did not want him to obtain and present new evidences at the time of the request for the motion to present the newly discovery evidence. He had to write to the Department in order to bring the update medical reports which was granted for an oral argument on the motion.

18. The new evidence was from the determination made by Social Security office and the truth from the second employer, 2nd employer along with other reports and the result from the MRI contrary to the defendant's examiner opinion.

19. His attorney told him a secret inside and outside of his office with a cross in his mouth that he needs to come out with a sum of money in the dark side for whoever before getting justice in his case. He was a little bit skeptical on the illegal, unlawful proposition made to him. He contacted the Attorney General on the matter whom asked him to contact the DIA. He wrote a report to the Commissioner and the chair member in his case. He wanted to go to work

where he stopped at the Massachusetts rehabilitation office.

20. A vocational consultant wrote a letter to the judge presiding in his case by mailing it directly to the DIA for him on the matter.  The plaintiff again wrote a letter to another senior law judge along with the judge presiding in his case to try of seeing as to whether he could meet with them and his attorney, face to face, to find the truth on the proposition made to him.

21. The 2nd senior judge responded back to him by advising him to bring the issue to the court before the single member but he did not mention it after seeing that he would be the one who will be the victim as it is now in his claim. His attorney and his defense were putting together to destroy him with other concerns. He regrets today for contacting the DIA on the matter.

22. On September 28, 1993, the case came to a hearing on the motion to reopen the record due to the newly discovered evidences. The defendant did not file a motion to object on the plaintiff's motion nor give an excuse on the reason for not responding to the plaintiff's motion.

23. At some relevant times, The defendant's examiner realized that the plaintiff might receive justice after hearing that there was a new evidence to reopen the record. The plaintiff does not know as to whether the examiner was the one requesting the request or the DIA sent the request to the

examiner, probably, for him to give his opinion on the
reason that he did not opine to the cervical spine in his
report which was part of the accident.

24. The examiner instructed the DIA with a judgement in a Fax
Request that the neck was not related to the accident at
work. He sent this report behind the plaintiff and the
defendant when both parties suppose to have a copy of this
record due to the finding on the X-ray. He told the court
that liability should be accepted to a certain period of
time for the back only where the court should not pay
liability benefits for the cervical spine.

25. The defendant was hiring the examiner to examine the
plaintiff but the examiner acted as a judge, juror,
mediator, an investigator, etc., in deliberating justice in
this case. He stated on the fax request that the plaintiff
hurts his back and head on March 23, 1990 when the plaintiff
brought the accident report to his office which clearly
stated neck and back injuries.

26. On or about February 22, 1994, the single member reached a
decision by denying the plaintiff's motion which was
depriving his right from meeting his burden of proof on the
newly discovered evidences which were not available at the
time of the hearing on November 13, 1992.

27. The plaintiff was frustrating, disturbing, upsetting,
distressing, suffering from anxiety, depression and

struggling to make it with low self-esteem after finishing
to see that the examiner willfully violated the Fair Labor
Standard Act ("FLSA") pursuant to 29 U.S.C.§ 201 et seq. by
failing to examine his cervical spine. He opined to this
effect in his report and mailed a false information to the
DIA against the plaintiff where he was the one who got
penalized for the wrongdoings of the examiner.

28. The examiner predicted that the MRI would not reveal any
finding in one day away from his examination when the MRI
revealed contrary to his prediction. He stated under oath
that there was no orthopedic finding result on the MRI where
the result is contrary to his story under oath.  He gave a
lot of inconsistent opinions to prevent the plaintiff from
receiving his compensation benefits by deceiving the whole
DIA and making the single member to believe an erroneous
opinion that the plaintiff was not disabled at the time of
his examination and evaluation. His findings were not true.

29. The examiner was acting as an investigator by showing in one
of his report that he was an IME Judge in forgetting that
his role was to examine the plaintiff for a report. The
single member did not accept the newly evidence to reopen
the record when the defendant's examiner was not fair and
honest on the record.

30. On or about August 5, 1994, the plaintiff was unable to
represent himself due to his psychological problems,

depressive moods, weakness and body balance. He did not have any knowledge of the law at the time. He petitioned to redraw his appeal from the Reviewing Board at the Department on August 11, 1994 due to his situation and condition which was granted at a later date.

31. On or about 11, 1994, the plaintiff wrote another letter to the chairman judge of his case by stopping at the DIA to drop it off. He asked to see as to whether he could give this letter to judge in hands. He sat down with the senior law judge outside of his claim by telling him the exact information that his attorney told him about the single member presiding in his case. He said that he only wants to sit down in a meeting between his attorney and the single member for finding the truth on the proposition made to him. The law judge heard the proposition and did not participate nor give an opinion to this effect. He did not send nor include the matter on the record.

32. At some later times, the DIA leaked the information to his attorney secretly whom stopped to represent the plaintiff due to a conflict of interest and his personal problems with other clients at the time

33. On or about September 12, 1995, the hearing decision was affirmed on due to such prior involvement in this case.

34. On October 11, 1995, the injustice caused the plaintiff to appeal the case at the Appeals Court. A single judge from

the same Court stated on page 4 of the memorandum that "
there would be a dance macabre of dead cases rising and
raffling their dusty bone anew " and advised him to re-file
on September 16, 1996 with a different theory and counsel.
He also stated that the Supreme Justice Court caught Mr.
Fleishman on numbers of offenses by involving in handling
client's funds on 4 different cases where Mr. Fleishman was
accepting to disbar from practice on September 27, 1994. He
left the plaintiff with an alternative to retry his claim
with different theory and counsel.

35. A few years later, the plaintiff heard that his attorney was
passed away due to his health problem making the plaintiff
to scare more on his constitutional right which was
violating that he would never receive justice in his claim.

36. On or about November 30, 1996, the plaintiff filed a new
claim with different Counsel due to the Memorandum and Order
by the Appeals Court. He was facing a lot of stresses due to
the deceitful reports which were putting a stop on his
disability benefits and violating the duty owed to him.

37. At a later time, the defendant's claim Adjustor was agreeing
to reimburse him due to the money paid for medications and
treatments. He contacted the Adjustor on more than one
occasions and mailed every single piece of information
asked. The Claim Adjustor hanged up her receiver into his
ear when he told her that he was appealing the decision

dated February 5, 1999 for the rest of the benefits owed to
him which was disrespectful but he is a prose in his claim.

38.  On December 6, 1996, a conciliator requested the plaintiff
to contact the Vocational Rehabilitation Program at the DIA.
He followed the advise and could not participate in the DIA
program due to the fact that he was not a Worker
Compensation Recipient. He also could not participate in the
state program since his case was not over. The defendant
agreed to pay and reimburse him all medical expenses paid
before the conciliator. After several efforts made in
letters, he never received such reimbursement from the
defendant on the matter until today.

39.  On or about July 14, 1997, a conference held before another
Administrative Judge, the 2nd hearing judge, whom issued a
conference order on July 16, 1997 by denying his benefits
but the judge carried almost the same decision made by the
1st conference judge on April 21, 1991 to his decision.

40.  The plaintiff timely appealed the order and went before the
same member again on January 12, 1998 for a hearing the Novo
due to the medical battles on the record. The member
understood the situation and  requested an impartial medical
examination which was appointed by the Department.

41.  On or about July 1, 1998, the Impartial Medical Examiner
conducted his examination for the Department. He revealed
that the plaintiff's disability was relating to the accident

at work and still disabled. He extended the disability
thereof by stating that the plaintiff needs to participate
in a rehabilitation program before returning back to work.

42.  During the time between, the defendant scheduled the
plaintiff to be examined by its psychological examiner where
it mailed all of the plaintiff's court record to its
examiner in violating the plaintiff's privacy.

43.  On January 12, 1998, the same judge heard the case again in
a hearing after the impartial examination. He accepted all
evidences that the 1st hearing judge was not allowing to
enter on the record at the time of the 1st hearing. The
defendant did not object on the impartial report but
accepted to settle the case in a lump sum settlement which
was raised by the plaintiff before the single member whom
did not stop the hearing to let both parties of resolving
the issue of lump sum settlement. This evidence is still on
the transcript whether it was for a penny of settlement.

44.  On or about February 5, 1999, the 2nd hearing judge reached
a decision in favor of the defendant due to the medical
evidences on the record. He found that the plaintiff was
disabled up to the impartial examination. He ordered the
defendant to pay the medical benefits up to the date of the
impartial examination and not for liability benefits. He
removed disability and liability from being together after
finishing to find that the claim was accepted as a

compensable injury. He based on a statement made from the defendant's psychological examiner which had nothing to do with the disability suffered to find the plaintiff not having an orthopedic disability. This issue in his decision which was not raising by and not even a concern to the defendant. He avoided the IME's opinion and did not adjust the single AWW which was never calculating rightfully on the 1st time filing at the DIA. He found that the plaintiff was an employee at the three employers and his disability was chiefly arising out of and in the course of his employment. He ordered the defendant to pay the medical expenses up to the date of the impartial examination but not for liability.

45. The plaintiff appealed the decision at the DIA but the reviewing board did not have the power to overturn the recusal of the senior judge on May 12, 2000 due to the first hearing decision. He appealed the case again at the Appeals Court whom also did not have the authority to change the Memorandum Order from the single justice on the same court.

46. The Further Appellate Review from the Supreme Judicial Court affirmed the decision by the DIA and Appeals Court without a real explanation on the issue raised by the plaintiff. It did not reverse nor recommend the unjustified decision made by the DIA which was accepting a falsifying evidence to discontinue the plaintiff's benefits. The first hearing judge was also excluding the cervical spine by repeating the

same diagnosis with the defendant's examiner in her decision. The appellate court did not ask the board to provide the reason for affirming the decision due to the recusal which was unfair and unconstitutional on the record.

47. The plaintiff was not the one making the defendant's examiner and the 2nd employer to provide a false information in his absence, directly, voluntarily, free will to the DIA but he is the one who paid the consequences of the wrongdoings in his claim.

## JURISDICTION AND VENUE

48. This Court has a jurisdiction over the subject of matter illustrating in sets forth above pursuant to 28 U.S.C. § 1445, Federal Employer's Liability Act ("FELA") on bad faith, breath of duty, discrimination, tort, miscellaneous actions, injustices, Fraudulent acts, jurisdiction of state court in connection with the law under the Fair Labor Standards Act, (" FLSA ") 30 U.S.C.§ 901, et seq.

49. This case also falls under the application of ERISA, 29 U.S.C.§ 1132 along with the preemption issue under § 301 of the Labor Management Relation Act ("LMRA"), 29 U.S.C.§ 185; 28 U.C.S. § 1331 and 29 U.S.C. § 216 (b) and other applications related to his claim.

50. The defendant was hired its examiner to perform an orthopedic examination to the plaintiff. Both parties,

members, the defendant and its examiner have its places of
business in this district subject to personal matter of
jurisdiction. The venue is proper here pursuant 28 U.S.C.§
1391 since the defendant had its business in this district
and it is subject to personal jurisdiction pursuant to 28
U.S.C. § 1445 FELA.

51. The defendant by its examiner improperly instructed the DIA
to consider his ruling which proves that the examiner was
materially breached his contract of examination on being a
judge in this case. The breach of the obligation took place
in this district; the defendant's business in this district
and subjects to jurisdiction in this district.

52. The 1st hearing judge did let the defendant and the
plaintiff's lawyer to reach into a lump sum of a settlement
agreement at the time of the pre-conference hearing.

53. The defendant also participate in interstate commerce.

## COUNT I
## PLAINTIFF'S ALLEGATIONS

54. During the FLSA and other applications period thereafter,
the job of the plaintiff at the time was to :
   a. carry a fixture to put it to a mainframe computer for
   testing different electronic boards. It requires two
   people to put the fixture on the machine sometimes.
   b. follow the requirement provided by the site on the test
   needed to perform for such day in accord with the

policies, guidelines and practice from the employer.

c.   receive the data necessary from the site in accord with
the employer's procedures, guidelines and practices.

55.   Plaintiff worked 40 hours per week at the employer and got
paid in hourly basis. He never lost a day of work from the
time of hiring to work on the contractor site until the last
day of employment, and rarely missing a day out of work
unless it was an emergency.

56.   The plaintiff also hold a second job at the time of the
accident to supervise one to three persons along with three
clients in the weekend shift from Friday night to Monday
morning. He had to provide a management and social
responsibilities at the place by helping children who are
unable to function properly for themselves. He worked a
total of 48 hours in every weekend without missing a weekend
out of work but one or more in rare circumstances.

57.   The plaintiff also worked at Cayman System, Inc., as a
consultant technician during the first shift. His duty was
to test and fix electronic boards at the request of the
employer. He worked a total of 40 hours a week in the second
shift without missing a day out of work but he might miss
one or more in rare circumstances.

58.   The primary duty of the plaintiff at the first employer was
to be honest in examining the board by giving an accurate
result after the test performed from the computer according

to the requirement from the contract signed at Technical Aid
Corporation to work at the GTE's site.

59. During the FLSA work period, a defective chair collapsed at
the site by causing the plaintiff to fall and injure his
cervical and lumbar spine which caused him today to seek
administrative remedies against the defendant for deceiving
and misleading the DIA on all counts, G.L.c.152, §§ 28;
G.L.c.93A,§§ 9 and §§ 11 approving by this court.

60. The plaintiff is asking this court to weight each evidence
already submitting at the DIA for justice, equal protection
under the law. The  examiner knew about the accident report
and removed the cervical spine from it by misleading and
deceiving the whole DIA in a piece of paper to benefit
itself. The second employer also acted intentionally in
providing different dates to prevent him from receiving his
constitutional right just because it wanted to avoid of
participating in the worker compensation benefits.

## COUNT II
## CLASS ALLEGATIONS ON PARTIES INVOLVED

61. The Plaintiff repeats and re-alleges paragraph 1 to 60 of
this complaint, comprehensively, and incorporates them by a
reference as fully set forth below under FELA:

62. The duties and activities of the plaintiff to the defendant
were to respect the FLSA with full honesty. The defendant
and its examiner were supposed to follow almost the same

requirement in their duties and activities as described above to the obligation owed. During the FLSA course, the defendant paid the examiner to examine the plaintiff under the same standard of employment procedure and practice from the law of Massachusetts to perform an honest examination for a fair opinion in a report.

63. The examiner's action demonstrates an unfair and deceptive practice by the Mass. Gen. Laws ch. 93A in faxing a false acts to the DIA which makes the single member to believe in a wrong opinion where the harms had caused the plaintiff to lose his demeanor. This wrongful fact constitutes a chapter 93A violation after seeing the prima facie evidence.

64. The examiner stated under oath that he took 10 to 15 minutes in seeing the plaintiff on an examination which was supposed to take at least 45 minutes to an hour on the first time seeing. His opinion was severely damaged the credibility and demeanor of the plaintiff by making the whole DIA to believe in this false interpretation due to his clear action, malicious act done against the plaintiff.

65. The plaintiff's spirit, soul and holly ghost were upsetting, frustrating, disturbing, distressing due to the outcome of justice in this claim.

66. During the FLSA period, the defendant was aware of the duties performed by its examiner and accepted before an administrative law judge that its examiner was not fair and

honest. These evidences are still on the court transcript
that its examiner was purposely, willfully, intentionally,
deliberately, prejudicially, maliciously repeating these
acts under 29 U.S.C. § 207 (a) at the DIA to take advantage
of the plaintiff on the record. His action caused the single
member under FELA to reach a decision against the plaintiff.

67.  The defendant failed to settle the claim after recognizing
the deceptive report from its examiner by sending the
plaintiff to the same examiner for repeating injustice after
injustices as stating in set forth herein for violation
under the 29 U.S.C. § 207 (a). Its examiner made several
inconsistencies in more than one occasions by repeating the
same actions again and again against the plaintiff.

68.  The benefit of the doubt usually reaches to the truth, the
MRI, which conformed to the quality of scientific standards
as set forth in 20 C.F.R. § 718.103. The examiner proposed
that the MRI would not reveal an orthopedic finding and gave
a contrary finding on the MRI's result. He faxed an untrue
statement at the DIA just because the X-rays reveals
Kyphosis on the cervical spine and he heard that the
plaintiff's claim would be reopened.

69.  The M.G.L.c.152, § 14 always requires a party to be honest
in filing a claim at the DIA. The serious and wilful
misconducts by the defendant's examiner caused the plaintiff
to lose his constitutional right at the DIA.

70. In presenting the evidence on the record, section 727.203
    (b) (4) calls for justice to stop this type of injustice
    like this example from repeating itself in the near future
    at the DIA. The single member was erred in considering the
    2nd employer and the defendant's reports to stop the
    plaintiff from receiving his constitutional right.

71. The prior involvement was never entering on the record where
    it should be barred from entering on the record since the
    judge did not take any disciplinary action to the language
    of violations made by the plaintiff's attorney through his
    plaintiff against the department. The judge had the power to
    impose an appropriate sanction to the attorney or refer him
    to the right office after finding the truth on the
    allegation where S.J.C. Rule 3:07, Canon 1, DR 1-102 (A)(4)
    was available to meet the plaintiff's attorney on his
    deceit, dishonesty and misrepresentation to the plaintiff.

72. The defendant faxed a letter, as a matter of fact, to the
    DIA to prevent the plaintiff from receiving his benefits.
    This deceptive practice describes under the Mass. Gen. Law
    93A under the violation of the statue from Massachusetts
    Workers Compensation Act under section 14 and 28, as a
    matter of fact, that the plaintiff would have, probably,
    received justice due to the newly discovered evidence had
    the defendant was not faxing a false information to the DIA.

73. During the rule 23, the defendant, its examiner, violated

the Massachusetts Law by providing an untrue statement to the DIA in absence of the plaintiff in order to stop him from receiving his constitutional right.

74. The defendant's examiner stated under oath that he took 10 to 15 minutes in seeing the plaintiff on an examination which was supposed to take at least 45 minutes to an hour on the first time seeing. His opinion really damaged the plaintiff's credibility and demeanor by making the whole DIA to believe in a false interpretation on the record.

75. Member (s), like the plaintiff, all were subject to the same lawful policy under the FLSA to perform a consistent examination on a duty owed without acting bias nor prejudice to fail the provision under the law.

## COUNT III
## VIOLATION OF THE LAW

76. The plaintiff repeats and re-alleges paragraph 1 to 75 of this Complaint, comprehensively, and incorporates them by a reference as fully set forth below :

77. In analyzing the independent medical examiner's conscience on opnion for the defendant, as described in paragraphs above, and as more fully showing in the Fax Request response from the examiner's office to the DIA, constituted an unfair, deceptive opinion under examination which declares an unfair justice by M.G.L.c.30A, section 14 (7) (a) (d) at the Appeals Court in connection with M.G.L.c.152, 14 at the

DIA and 28 U.S.C.§ 1445, FELA in this court. The examiner deceived and misled the whole DIA directly but acted unjustifiedly against the plaintiff in his report.

78. As described in paragraphs above, the defendant's examiner did not fully examine the plaintiff fairly but provided a false information to the DIA. The defendant never disagrees on the dishonesty of its examiner, pursuant to the provision of chapter 152, 14 in connection with M.G.L.c.30A, section 14 (7) (d ), that its office did receive the report with the wrong facts contained therein.

79. The defendant promised the plaintiff in more than one occasions that it would reimburse him due to the money paid for treatments and medications as stated in paragraphs above by leaving the plaintiff with hope that he would receive the reimbursement on the next mail by making the plaintiff to check his mail in every day at the time where no mail has arrived. The plaintiff had a relation with the defendant in writing on the matter which was disrespectful on the part of the defendant by mistreating him just because it got connection with the law on the record.

80. The defendant violated the plaintiff's privacy by mailing his personal court records to his psychological examiner.

81. The plaintiff does not know in this day on what report is accurate making the department to discontinue his benefits when the defendant submitted more than 3 reports with

different signatures to stop him from receiving his
constitutional rights.

82. The defendant, the examiner, the 2nd employer, was making
the plaintiff to look like he was submitting a fraudulent
claim at the DIA on concurrent employment just to avoid of
participating on the worker compensation benefits. The
company purportedly signed a document stating that the
plaintiff was fired on March 18, 1990, a week before the
accident. This act could have caused the plaintiff to be
locked in a solitary hole for his constitutional right.

83. As a result of the violations and described paragraphs
mentioned above, the plaintiff is suffering a judgement from
this court against the defendant with interest and penalty
due to the dishonesty and trust which caused the 1st and 2nd
hearing decisions to be tainted with error of law along with
the evidences on the record for playing with his personality
and principles after the 2nd hearing decision.

## COUNT IV
### NEGLIGENCE, LEGAL, MEDICAL DUTIES OWED BY THE DEFENDANT

84. The Plaintiff repeats and re-alleges paragraph 1 to 83 of
this Complaint, comprehensively, and incorporates them by a
reference as fully set forth below under FELA, pursuant
chapter 93A for concealment, mis-diagnosis and others:

85. In or about July 17, 1990 as well as April 14, 1992, the
defendant's examiner performed a rushing examination by

taking 10 to 15 minutes, as a matter of fact, which was approved under oath on September 1, 1992, as stated in paragraphs above where such examination was supposed to take at least an 1 hour on the first time seeing that the defendant paid the examiner in an hourly basis, as a matter of law, due to the evidence on the record that the poor examination establishes a cause of action here.

86. The defendant accepted before a law judge at the DIA that its examiner was legally and not properly examined the plaintiff which placed the defendant on almost the same category with its examiner by knowing a deceitful fact and refused to respect the 2nd hearing decision due to the medical reimbursement as stated in paragraphs above.

87. The defendant had a duty to provide a fair or close to accurate findings to the DIA but its examiner exclusively rejected a true evidence from the industrial accident at the time of the 1st hearing which caused the plaintiff's claim to be of where it is now, unable to receive a fair decision, due to the impediment of benefits when it was not his fault for his claim to rise on benefits.

88. An incorrect diagnosis could lead an injury to a disability in the same way that an incorrect examination is an incorrect diagnosis for an incorrect treatment. The incorrect diagnosis from the defendant's examiner caused the DIA not to treat the plaintiff with the law due to the true

evidence on the record. The falsifying information was the proximate cause making the plaintiff to suffer of financial depression. This particular violation by the defendant's examiner under the statute was liquidated in making the DIA to manifest injustice in its court room.

89. The defendant was aware that its examiner took 10 to 15 minutes during each examination and evaluation which was supposed to be at least one hour on the first time seeing and confirmed under oath that he did take 10 to 15 in examining the plaintiff, as stated in paragraphs above, which constituted a willful and knowing violations from the medical examination under the Workers' Compensation Act where the plaintiff's disability would have been resolved by now had the physical examination was not roughly performed. The plaintiff was mentioned the concern to his treating physician at the time and submitted this particular piece of information to the 2nd hearing Judge and the Reviewing Board due to the roughly examination by the examiner.

90. As a result of the injustices describing above causing the DIA to become a court of injustice from the beginning of hearing until the end of this claim, the plaintiff suffers a Judgement against the defendant with interest to date, plus future interest for a rushing examination as stated in paragraphs above which caused the department to lose its credibility in a single claim before a lay citizen.

**COUNT V**
**CLASS ACTION ALLEGATION ON THE MALFEASANCE**

91.  There are several common questions relating to the facts and laws in this case, the duties of the defendant through its examiner was improper and inconsistent with the definition of the status on honesty under the M.G.L.152, § 14.

92.  By its conduct, as set forth herein, the defendant violated the provision of M.G.L.152, 14 in faxing an intentional fax request to the DIA in absence of the plaintiff to discredit his demeanor and credibility by making the whole DIA to believe in an erroneous finding. This type of injustice did cause the plaintiff to become unbelievable on the wrongdoings by other party in his claim.

93.  The defendant had control on part of work that its examiner was performed by submitting the same report to the DIA with different signatures to prevent the plaintiff from receiving the liability owed to him in his claim.

94.  The plaintiff went to see the defendant at the request of the insurer in the IME's office where the fax request had a letter head Ime, Inc., Independent Medical Examination. The defendant was under the control of the Ime, Inc., whom supposed to have control over the work that the defendant was performed in its office.

95.  The independent judgment of the defendant was the appropriate degree of conduct from the Ime's office by

sending the same report to the DIA with different signatures
as stating by the law that anyone who accepts to sign a
document in knowing the content of the document signed is
responsible on the document which will serve as a legal
document as here in this case. The defendant's examiner
report and its Fax Request came from the Ime, inc.'s office.

96. The letter head of the Fax Request stating Ime, Inc.,
Independent Medical Examination. The content on the fax
request revealed that the plaintiff had an injured to his
back and head only. His last Ime indicated no disability to
a certain date but liability should be accepted for the back
only and not for the cervical spine.

97. The defendant, its office contributed on the negligence,
intentional infliction caused by its examiner with the
wrongful, illegal, discriminatory, unlawful actions done in
mailing a false fact to stop the plaintiff from receiving
his right when the single member at the DIA believed that
the defendant was a credible doctor on the record. The act
done caused emotional distress to the plaintiff.

98. This claim was not a complex case to resolve, the first
hearing judge erred by not protecting the rights of an
injured worker when the issue of fraud raised by the
plaintiff that his attorney was involved in such, such tc
prevent him from receiving his constitutional right at the
DIA. The obvious fact reveals itself that his lawyer got

caught in other cases from a different court.

99.  The hearing judge's ruling was arbitrary where a reasonable
     judge would not accept a fraudulent report to stop the
     plaintiff from receiving his constitutional right.

100. This case was only a worker compensation case where it
     should have be treated as such. The 2nd employer was also
     contributing on the negligence, intentional infliction,
     dishonest, wrongful, discriminating, unlawful, actions
     committing by mailing a false fact to the DIA directly to
     avoid of participating in the compensation benefits which
     caused the plaintiff to have stress and distress.

101. The judge abused her discretion by denying the plaintiff's
     motion to reopen the case when the plaintiff consented in
     writing that his attorney was making a wrong allegation
     against the DIA. Again, he did substantiate his claim
     against the defendant; except, he did not have the authority
     nor the law on his side to overturn the injustice done to
     him to justice but he was the one who got penalizing for the
     wrongdoers in his claim when he was not the one causing his
     claim to rise on benefits without settlement.

102. This deceptive practice, tortuous conduct by the defendant,
     its examiner and the 2nd employer caused the single member
     to believe in a wrong prediction, assumption, supposition,
     tradition like the year of 1932 in this country which had
     nothing to do with this claim.

## COUNT VI
## DISCRIMINATION AND BREACH OF CONTRACT

103. The plaintiff hereby incorporates paragraph 1 through 102
   above and re-alleges the allegations, the same, as stated
   therein pursuant to 19 U.S.C. 1673 on intentional violation
   under the customs duties and 42 U.S.C.1988 under the common
   law of civil right for the insufficiency of the facts
   produced contrary to the real facts involved in this claim.

104. In this court, the plaintiff brings a separate cause of
   action against the defendant under to the Fed.R.Civ.P.23 due
   to the examiner who was discriminating against him visibly
   in his report and wrote an untruth statement to support his
   feeling, emotion, anger, report according to the action done
   on the FAX Request which proves that the defendant was
   discriminated against him due to his status, color, race,
   age, sex, ethnicity in the worker compensation case, etc.
   His report also proves the rests of its findings.

105. The worker compensation claim was not over yet where the
   plaintiff could not be able to file a discrimination
   complaint against the defendant early on the discriminatory
   act done by its examiner whom constructively stated a lot of
   irrelevant issues relating to discrimination on its report
   in connection with 28 U.S.C. § 1445, 92. Its independent,
   pre-adjudicated practice and action caused a severe harm to
   the plaintiff's right at the DIA.

106. The defendant discriminated against the plaintiff on the record by mis-leading and categorizing facts, giving wrong names and describing wrong aspects in the claim, performing and acting improperly on the record.

107. During the process, the defendant violated the contract made with the plaintiff and acting improperly on the record which had caused the plaintiff's injury probably not to be over by now. A contract with the defendant is a contract, in a sense, with the defendant's examiner.

108. According to the Fed.R.Civ.P.23, the plaintiff brings this claim against the defendant under the Massachusetts law as an exempt from the provision of M.G.L.c.152 section 14 making the plaintiff to have a low self-esteem in his life.

109. As a result of the above-described breaches of contract by the defendant, the plaintiff is suffering a Judgement against the defendant with interest to date, plus interest for producing a wrong judgement opinion to the department.

## COUNT VII
### DEPRESSION SUFFERED DUE TO THE INJUSTICE DONE

110. The plaintiff repeats and re-alleges paragraph 1 to 109 cf this complaint, comprehensively, and incorporates them by a reference as fully set forth below:

111. During the course of suffering, the plaintiff was accepting to a chiropractor school to remove himself from the depression that he suffered. He owed some money to

Northeastern University where he could not receive his
transcript. He did not get a chance to see as to whether he
could have made it through or not. He was not able to
participate in the vocational program at the time. He again
tried to go to Northeastern University Law School. He could
not receive the help needed to move on to the next step of
treatment due to the act done by each party involved.

112. The plaintiff still suffers from depression after seeing
that he did not do anything wrongly to anybody in his claim
where he is the one paying the consequence of the wrongdoer
by other parties in his claim which was and still not an
easy duty. He has been staying at home like a loner and
loser by suffering in financial depression when he used to
make it very well in life. His body could not function
properly before but he wakes up from great harm, depression
and frustration done to him where he could not receive the
treatment needed to go to school.

113. There was psychiatrists, psychologists and his physicians
found him to have psychological disability. Lately, he has
been accused in almost everywhere he seems to go just
because he is looking for his constitutional right.

114. He had to do odd things against his will to survive in
taking buses, walking long distance sometimes, going to the
market by bus, carrying heavy, light weight of begs in his
hands, being unhappy and unable to have in order to survive

to support himself which is not easy on the injustice.

115. He used to take a lot of heavy drugs before in order to feel
     better and follow sleep. It was a nightmare to see himself
     in this situation that he had tried on many occasions to
     remove himself from depression by contacting the vocational
     rehabilitation where he did not have to achieve of what he
     wants to do. He could not go out to find a companionship due
     to his financial situation.

116. Most of his friends have been in high paying job where he
     could have been like them since he love politics but the
     action done by the defendant, its examiner, each member, the
     employer caused his claim not to reach a resolution at the
     DIA when he was not the one deceiving and misleading the
     DIA. He has been suffering and still can not receive justice
     due to the wrongdoings by other party in his claim.

117. Due to the injustices stated above, the plaintiff has been
     receiving a lot of spiritual treatments from the Lord to
     prevent him from having a stroke nor committing any wrong
     thing in his life which is not an easy duty after of what he
     went through with stress and anxiety. He used to have high
     expectation and now he sees himself in a homeless situation
     when he was working very hard to start a business in helping
     people in this country.

118. His high blood pressure was elevating from time to times to
     148 by 122 +; 140 by 110, 90 + due to the injustice done to

him in his claim. He could have died during the process of
unjustified decision but he is able to maintain it lately
with 2 to 3 different blood pressure medications.

119. As a result of the facts stating above, the plaintiff was
extremely depressed until God removes him to some instants
by putting him in a mission for him which has been helping
him in almost every day to keep him of going after the
discontinuance of benefits where he is claiming his right in
this issue in order for him to return the favor back to all
spirits involved by another form in life.

## COUNT VIII
## DISTURBING THE WELL BEING OF GOD

120. The Plaintiff repeats and re-alleges paragraph 1 to 119 of
this Complaint, comprehensively, and incorporates them by a
reference as fully set forth below:

121. The plaintiff is an individual who believes in all religious
under the direction of, and represents, the intern father,
Jesus Christ, his soul, his spirit, holly ghost, holly spirit
and Amen for the best interest of his health. It would be
proper for the doctrine of the law to create an exception here
with its normal ruling of practice for this example to carry
on in the history book that his intern life was suffering
while he is suffering due to the injustice done to him by the
defendant on the record.

122. As a nation under the constitution, the early injustice caused

harm to his status in both economic and physical conditions where he is claiming his right on all issues expressing under this court for each party representing here.

123. The plaintiff is only looking to have a peaceful agreement with the party which had done wrongly to him in his claim. It was due to this accident that he was receiving social security disability. The office of medicare deserves to get reimbursed on the services provided to him since it was not the one causing his claim to rise on benefits without reaching to a settlement. The first member allowed both parties to reach a settlement after the case being accepted at the DIA.

124. The report from the defendant, its office and the 2nd employer were the one convincing the judge that he was not disabled on concurrent employment and examination at the time.

125. The plaintiff is claiming his right under the discriminatory practices with the meaning of the Civil Right Act 42 U.S.C. § 1981 and the Fourteenth Amendment for injunctive relief that he lets the law to decide on the matter.

126. His spirit and soul were affecting where he had to receive a lot of spiritual and inspirational blessings from the church of our Lady of Pity and Lady of Perpetual under the direction of a father to prevent him from being a cadaver in life.

127. The holly ghost and amen have been upsetting by making him to have a lot of scary dreams from times to times in the dark side of life due to the outcome of his claim where he has a

restriction preventing him from going to the next step to serve this nation for All on this earth.

128. One has to accept to a certain fact, accusation, favor when he or she is under care for his or her right; otherwise, he or she is no good when he or she is telling the truth in an aspect, issue as here in this case. The plaintiff has to agree sometimes against his principles where he has no choice to receive the injustices done to him early.

129. The plaintiff is only asking this court to create a new substantive liability for his spirit, soul, the intern father, the intern son, holly ghost and Amen whom demand justice for all victims involved in his allegations. The social security provided benefits and treatments to him. His medical and hospitals bills did not fully finish to pay yet. He has to return the favor back by the spiritual lawyer, judge, doctor, politician, president, leader, anchor who helped in the dark side to bring this case to an exception quietly without lighting a light in our land.

130. The DIA did not fully exercise its discretion to allow him of receiving his constitutional right which was violating by the defendant's examiner and the 2nd employer. They both misled and deceived the DIA directly without the involvement of any party participating in their actions. The plaintiff is the one always doing more works to prove the injustice done to him.

131. His mind was not fully setting in what to do since he was not

a lawyer where he has to call a firm in asking an attorney on how and what to do for filing a claim in this court.

132. The Lord wants him to be honest and tell the truth in every question asked by any party in his claim while the holly Ghost wants the journey to be more interesting through his body and mind for either sadness or happiness of the Soul but the vocal sound rejecting the reality of life usually the one performs the intern communion to an existence for the spirit of no choice inside of the outer world.

133. By the virtue of discrimination from each action, injustice, prejudice, harm done to the plaintiff in his claim, it's only God who could remove a Shepard case from the location of un-justification to justification. The defendant, its examiner, the plaintiff's attorney, the defense's lawyer, the 2nd employer, the DIA due to the information receiving by the defendant's examiner and the 2nd employer were all against the plaintiff whom is asking this court for help on each civil issue stating under its legislative.

134. As a result of the disturbance, the strong reason causing the defendant's examiner to lie about plaintiff in his report was only the result of the X-ray from the hospital on the date of the accident which reveals kyphosis on his cervical spine. The plaintiff is claiming his right in the new interpretation, exempt of the law which will be into application under this court for each wrongdoing in his claim at the DIA.

## COUNT IX
## SOCIAL SECURITY DISABILITY

135. The plaintiff repeats and re-alleges paragraphs 1 to 134 above pursuant to U.S.C.42 §§ 301 & seq; 401 et seq; 1301 et seq and for medicare treatment U.S.C.48 § 1382i of this complaint, comprehensively, and incorporates them by a reference as fully set forth below:

136. During the year of 1991, he had a lot of scientific tests done such as MRI, X-rays and EMG before the discontinuance of benefits. He also had a test done on a computerized strength. The results of the tests done revealed chronic fatigue syndrome, denervation, bulging disc, kyphosis and others which can be a severe impairment depending on the person since every nation is unique on this earth.

137. This case was discontinued on March 21, 1991. The plaintiff applied for social security disability and started to receive benefits in or about 1992. He notified the defendant on the matter that he was receiving social security disability benefits with periodic reviews by the office due to the accident at work on March 23, 1990.

138. He received treatments, medications, injections, physical therapy, traction, etc., at the request of his doctors in the hospitals, doctors and therapies' office. He also received social security disability due to his total incapacity under the general laws c. 152, § 43.

139. The defendant did not accept to reimburse medicare and social security on the payment paid to him. The 2nd hearing judge stated that the defendant had to pay medical benefits up to the date of the impartial examination and did not do so.

140. His case came to an hearing on November 23, 1992. His medical condition still does not improve but he had tried on many occasions to retrain himself by following the advise of his physician and the Impartial Medical Examiner to participate in a vocational rehabilitation program. He received an answer that his case has not been resolved yet where he could not be accepted in the state rehabilitation.

141. The defendant did not respect the decision made by the 2nd hearing decision on the medical payments. He also used to pay to receive treatments and buy medications but he did not receive such reimbursement from the defendant.

142. A law judge instructed the defendant to respect the decision by showing that the superior court will enforce the decision in affirmative action under diversity case. He made several efforts to collect the payment from the defendant and did not succeed on the matter. The defendant only wanted to take an advantage of the plaintiff for being a prose in his claim.

143. As a result on the social security, the plaintiff asks the law to order the defendant of reimbursing the social security under the M.G.L.c.152 section 30 due to the wrongdoing of its examiner on the record. He did try on many occasions to go to

the next level for vocational rehabilitation but he was unable
to receive the help needed when he was not his fault for his
case to rise to an impediment of benefits, as factuality, when
he never received justice due to FELA involved in his claim.

## COUNT X
## VOCATIONAL REHABILITATION

144. The plaintiff repeats and re-alleges the paragraph 1 to 144
above pursuant to U.S.C.29 § 762 and 764 of this complaint,
generally and incorporates them by a reference as fully set
forth below for vocational rehabilitation:

145. A long term disability does not mean that he could not be
trained nor entitled to retrain himself and participate in a
rehabilitation course. He had tried on several occasions to
see as to whether he could return to his normal activity. He
was accepting to participate in a vocational rehabilitation
due to the findings from his treating doctors, psychiatrist,
independent doctors that he does not even see in a regular
basis along with the findings from the psychologist of the
social security disability office. They all substantiated his
disability but other parties did want him to progress.

146. The plaintiff wants to retain himself to see as to whether he
could return back to the labor market again since it was the
injustice done to him early making him to be in the situation
that he happens to be now on non-justice.

147. Due to the injustices done by the 2nd employer and the

defendant, its examiner on the false facts submitting to the DIA, the plaintiff lost his right. The dishonest, unjustified evidences made the whole DIA to look as a court of injustice which likes to manifest injustice to innocent victims in a case. He was in heavy depressive medication and was not able to represent himself at the time of the 1st injustice issuing.

148. The plaintiff complied with the law in proving the injustice done by the DIA to the Appeals Court and Further Appellate Review. He pays the law of this court to appear in his claim since there is always a superior court as here to review the appellate court opinion due to an early injustice done to a victim in case. He had a back problem and neck problems along with other issues relating to his injury. He did perform odd things before with precaution to prevent his condition from irritating when he did not have anybody to do them for him such as painting, mapping, sweeping, carrying his belongings.

149. As the result above for rehabilitation, the plaintiff did make a lot of great efforts to receive the program course but he did not receive the falsifying promise made by the defendant to proceed on the gift delivering to him now by the Lord. He was unable to perform due to the early misleading conduct involved in his claim and now the Lord is helping him to prove the deceitful, actionable violation by the defendant. He files this complaint in asking the law to allow me of receiving the course of treatment in this field.

## COUNT XI
## SEEKING THE AUTHORITY OF THE LAW

150. The plaintiff repeats and re-alleges the paragraph 1 to 149 this complaint, generally and incorporates them by a reference as fully set forth below:

151. This case was never reviewed the 1st hearing decision by the reviewing board at the DIA. It takes three law judges to review a case where the prior involvement was not on the record. No party accepted nor waived the disqualification of the recusing judge. The decision was unconstitutional with a wrong date in the front page stating that the decision was issued in January 29, 1992 when the hearing took place in November 13, 1992. The single member discontinued the benefits owed to him due to a non-medical date where the law requires a date from a medical report to discontinue a compensation benefit. This serious and willful misconduct by the employer and the defendant's examiner constituted a serious evidence under the provision of M.G.L.c.152 section 28 for being prejudicial, unfair, dishonest, against the plaintiff in his claim just because he was telling the truth in his claim.

152. The plaintiff challenges the defendant to all counts to both subject matters and person that the state court erred in issuing justice in his claim by making his claim to place under 28 U.S.C.§ 1447,on lacked jurisdiction, error of jurisdiction, miscellaneous, diversity, etc.

153. The defendant failed the fairness by refusing to pay the plaintiff after recognizing that its examiner was acting in bad faith against him which falls under 18 U.S.C.§ 1445 in this court. The DIA was not acting fairly after hearing this fact by not reversing the early decision made by the first and second hearing judges on the record.

154. The 2nd hearing decision was not based on the Impartial Medical Examiner's request under M.G.L.c.152, 11A to resolve the early injustice done in the plaintiff's claim. The impartial report was accepted as a prima facie evidence over all medical evidences on the record without any objection from the defendant on the record where the judge was putting it aside on his decision which unjustified by the DIA.

155. The defendant was going to settle the claim whether it was a penny offered where the judge has the obligation to stop the hearing. The defendant called its claim adjustor to see on what it would be able to offer on the lump-sum settlement as described under the compensation statute specifically under M.G.L.c.152, § 48(5). The judge could have avoided the abuse of his discretion by ruling in this evidence to resolve the issue involved but the plaintiff had the impression that the judge did not want the defendant to take an advantage of him on the matter as has been happening and appearing.

156. The impartial report was under the provision of chapter 152, 11(A) where the DIA was not placing in the role of

discriminating against the plaintiff to remove the defendant in the battle with the plaintiff to remove the defendant in the battle with the plaintiff for taking over when the law supposes to be the mediator, judge, arbiter in this claim.

157. The plaintiff is only a Shepard, student from the divine intellect administrator through the air, looking to receive his constitutional right in his claim. He is praying this court to make a specific finding and determination civilly on the early sufficient evidences from the report to prevent this type of injustice from happening in the near future.

158. Having exhausted the administrative procedures at the state level, the plaintiff asks the law permission here to bring his civil allegation against the defendant into this court.

159. The Board lacked of jurisdiction to affirm the first decision without putting it on the record nor filing the right motion to replace the recusal judge to another law judge due to a prior involvement for an impartial decision.

160. The prior involvement in affirming the 1st hearing decision was arbitrary, capricious, contrary, negligent to the plain language of the Worker Compensation Act at the Reviewing Board to accept a faulty evidence in stopping the plaintiff from receiving his constitutional right and not reporting the plaintiff's attorney to the bar of discipline at the time.

161. The board had the authority to request the truth from the plaintiff on the information submitting to the DIA about the

proposition made by his attorney on the record.

162. The appellate court has a superior court when a mistake of fact or coercion is taking into account by injustice to prevent a victim from receiving his vital right in a case.

163. The defendant did accept before a law judge that its examiner was not honest defining as bad doctor practicing medicine. The appellate jurisdiction still did not return the 1st hearing decision to the DIA in ordering to reassign this case to another law judge to review the discrepancy of the single member on the decision under M.G.L.c.152, 11 (C) which was frivolous, capricious, arbitrary, contrary to law. It did not rule under the appellate procedure §§ 1:4 (2d, ed. 2002) on how or what it would resolve the early misconduct done as a matter of fact and law due to the early error of law sustained wrong facts in this claim.

164. Moreover, the first hearing decision was unconstitutional and contrary to law in adopting more than one reports with different signatures to stop a plaintiff from receiving his constitutional right at the DIA.

165. This prima facie evidence is only calling upon this court for due process of law to appear in this claim. The extreme and outrageous conducts from the defendant, its examiner and the 2nd employer brought the plaintiff to emotional distress due to their intentional inflictions in this claim.

166. This knowing and willful violations done by the examiner for

the defendant and the second employer come to an evidence of fact under the common law affecting a worker compensation recipient from receiving his constitutional right where this fact is a genuine material here under the common legal question of law asking this court for a fair and efficient justification, adjudication in this claim under the violation of G.L.c.93A, §§ 9 and 11 which call for multiple punitive damages on the violations done causing the process of rights to suffer from the due process of law at the DIA.

167. The Appeals Court as the further appellate review erred in not requesting the prior involvement from the DIA before affirming the decision of the reviewing board under the M.G.L.c.30A, 14 (6) and 14 (17). The prior involvement was not on the record and did not suppose to enter on the record.

168. As the result of all injustices done, the decision of the first hearing judge was adopting the falsifying information in showing clearly that the defendant's medical examiner was not honest in making the whole DIA to believe in wrong facts.

### PROSE ATTORNEY'S FEE

169. The plaintiff repeats and re-alleges paragraph 1 to 168 of this complaint, comprehensively, and incorporates them with all counts by a reference as fully sets forth herein.

170. He is claiming the right of each spirit, inspirit by each member's action which constitute a wrongful, haughty, illegal,

prejudicial acts done to his claim under each count above that this country believes under one god, one nation, one justice to protect all lives in equal protection of the law where his spirt, soul, holly ghost and spirit represent it now for the universal mission around the globe.

171. By the application of each statute of law stating above, the plaintiff is entitled to receive a reasonable prose attorney's fee and costs of action pursuant to section 502 (g) (1) of each statue involved in this claim specifically under 28 U.S.C.§ 1445, M.G.L.c.152, 13 due to the hard work putting and done at the DIA, Appeals Court, Further Appellate Review and this court to receive justice, his constitutional right and benefits at the DIA that most parties want to stop from receiving justice and its basic right.

WHEREFORE, the plaintiff demands judgment against the defendant for the early damages done and such other relieves as it deems and appropriate by this court to :

A) declare all counts of this action as a collective action pursuant to 29 U.S.C. § 216 (b) and return the case back to the Supreme, the Appeals Court, the DIA or its proper avenue for reviewing the first hearing decision as to whether the judge was fairly accepting a deceitful report to stop him from receiving his constitutional right;

B) declare that the first hearing failed the judicial discretion in due diligence by adopting reports on party who misled the DIA for personal gain;

C)  direct that both decisions were capricious, arbitrary and contrary to law;

D)  advise that another judge was able to replace the recusal of the judge when a recusing judge filed the correct paper to let either party involved in a claim to waive or accept the judge's disqualification as here in this case;

E)  order that the recusing judge has the obligation to enter the prior involvement on the record and asked the plaintiff to provide any information wanted from the proposition;

F)  avoid the so-called prior involvement to enter into the record since the recusing judge did not put it early on the record;

G)  make an informed decision between the examiner and 2nd employer about whether to participate in the early wrongdoing for not receiving justice on the 1st time filing at the DIA;

H)  determine the damages done by the defendant causing the whole DIA to believe in erroneous facts;

I)  bring all counts into this court to prevent the early injustice from repeating itself at the DIA in the near future;

J)  analyze the truth that the defendant's examiner was hiring to perform a duty for the defendant which was delivered to the defendant whom submitted the wrong fact to the court;

K)  allow the plaintiff to recover under each serious and willful misconducts done by the party misleading and deceiving the DIA for personal gain under the G.L.c.152, §§ 28 and G.L.c.93A, §§ §§ 9 and 11;

L)  pray this court honor to see that he is not the one who makes his claim to rise on benefits without lump sum settlement;

M)  teach that the defendant's examiner also went behind the defendant and the plaintiff in producing a falsifying fact to the department of industrial accidents;

N)  determine the damages done by the employer which causes the

whole DIA to believe in a wrong assumption in order to avoid of participating in the worker compensation benefits;

O) determine the damages sustained by the plaintiff from the defendant pursuant to M.G.L.c.152, 28 in violation of M.G.L.c.152, 14 to benefit its own party on the record;

P) prevent any disturbance after the decision from stopping the plaintiff from receiving his constitutional right since the decision was unconstitutional on the record;

Q) award those damages in favor of the plaintiff, in consequence of the wrongful conduct stating in this complaint, for such pre-judgement interest as required;

R) prevent any hearsay evidence from bringing this claim to a beginning in square one again as it was since all evidences were already accepted into an account in this claim;

S) acknowledge that a great, fair, brave, impartial heart will not remove the plaintiff from the battle with the defendant to take over in order to put him in a safe place for what he did not do purposely to the court in his claim but it will issue justice due to the evidence on the record;

T) grant plaintiff further relief as may deem just and proper;

U) allow the plaintiff to say pray the Lord with the trumpet of happiness that justice finally serves in this claim by a fair, brave, impartial court as here located in the state of Massachusetts of this country.

Mr. Gerard D. Grandoit,
Submitted by its prose,
*Gerard H Grandoit*
Gerard D. Grandoit, Prose
P. O. Box 400547
Cambridge, Mass. 02140
Telephone # (617) 354-7406